IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYL JOHNSON a/k/a Sylvester Thompson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-03928 |
| | ) | |
| ERIC BARRIER, p/k/a ERIC B., WILLIAM | ) | |
| GRIFFIN, p/k/a RAKIM, ERIC B. MUSIC INC., | ) | |
| f/k/a ERIC B. AND RAKIM MUSIC, INC., a | ) | |
| New York corporation, UMG RECORDINGS, | ) | |
| INC., a Delaware corporation as successor in | ) | |
| Interest to MCA Records, Inc. and Universal | ) | |
| Records, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant UMG Recordings, Inc. ("UMG") has moved the Court to dismiss the Second Amended Complaint and for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(6), and 12(c). (R.83). The Court now considers UMG's personal jurisdiction challenge pursuant to Rule 12(b)(2). For the reasons set forth below, the Court grants UMG's motion and dismisses the Second Amended Complaint without prejudice. The Court further grants Plaintiff Syl Johnson ("Johnson") leave to seek limited jurisdictional discovery over UMG, as described more fully below.

## BACKGROUND

Plaintiff Johnson is a Chicago-based rhythm and blues musician who operates Syl-Zel Music Company, a music publishing company. (R.78, Second Am. Compl. ¶ 5). He is the vocalist, guitarist, and band leader of the sound recording, "I Feel an Urge." (*Id.*). Johnson

maintains all legal rights arising from this work, including the right to license samples, to collect royalties, to make and sell reproductions, and to publicly perform the recording. (*Id.*).

In this action, Johnson alleges that Defendants intentionally transferred portions of "I Feel an Urge" onto their sound recording, titled variously as "Know the Ledge," "Juice" and "Juice (Know the Ledge)," without his consent. (*Id.* ¶ 1). Specifically, Johnson alleges that Defendants[1] manipulated and sliced a 3.094-second fragment from the bridge of "I Feel an Urge" into three shorter segments before incorporating it into "Juice." (*Id.* ¶¶ 29, 40). Johnson further alleges that the misappropriated sample comprises 25 percent of "Juice," making its use so pervasive that he is tantamount to a third vocalist in the song. (*Id.* ¶ 41, 43). Johnson discovered the misappropriation in December 2013, after a disc jockey listened to "I Feel an Urge" and "immediately recognized Johnson's voice" as featured in "Juice." (*Id.* ¶ 58). Johnson alleges 358 unlawful uses since 1991, ranging from theater and television movies to DVDs, greatest hit compilations, music videos, video games, and commercials. (*Id.* ¶¶ 1, 64; R.78-16). He brings a claim for misappropriation (Count I), unjust enrichment (Count II), civil conspiracy (Count III), and injunctive relief (Count IV).

Defendant UMG now challenges the Court's personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2). UMG is a Delaware corporation with its principal place of business in California. (R.78, Second Am. Compl, ¶ 6). UMG is not registered to transact business in Illinois. (R.83, Opening Br. at 5) (citing R.83-1, Cho Decl.). UMG does not (i) rent, possess, own, operate, hold, or control an office or real property in Illinois; (ii) have a telephone number or mailing address in Illinois; or (iii) have a bank account in Illinois. (*Id.*). UMG has five Illinois-based employees out of 1,000 company-wide, all of whom work out of their homes

---

[1] Defendants Eric Barrier, Eric B. Music Inc., and William Griffin have not appeared in this action. The Court previously entered default orders against them. (R.67; R.66; R.28).

2

and report to supervisors in California, New York, or Tennessee. (*Id.*; *see also* R.87, Second Am. Compl. ¶ 19).

## **LEGAL STANDARD**

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Central States v. Phencorp. Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006). In analyzing a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without the benefit of an evidentiary hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). Under such circumstances, courts take "the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Id.* Where the plaintiff fails to refute facts contained in the defendant's affidavit, however, courts accept those facts in the affidavit as true. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

## **ANALYSIS**

### I. Applicable Legal Principles

In this diversity action, personal jurisdiction is governed by the law of the forum state. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). A "court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's long arm statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause." *Felland*, 682 F.3d at 672 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)); *see also N. Grain Mktg.*, 743 F.3d at 491-92.

"Illinois law permits its courts to exercise jurisdiction over a person 'as to any cause of

action arising from . . . (1) [t]he transaction of any business within Illinois[.]" *N. Grain Mktg.*, 743 F.3d at 491 (quoting 735 ILCS 5/2-209(a)(1)). The Illinois long-arm statute also contains a catch-all provision, permitting a court to exercise personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). "Thus, the [Illinois] statutory question merges with the constitutional one[.]" *N. Grain Mktg.*, 743 F.3d at 492. Because the Seventh Circuit has recognized that "there is no operative difference between these two constitutional limits," the key question is "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted); *see also Russell v. SNFA*, 2013 IL 113909, ¶¶ 32-33, 987 N.E. 2d 778, 785-86 (Ill. 2013) ("there have been no decisions from this court or the appellate court identifying any substantive difference between Illinois due process and federal due process on the issue of a court's exercising personal jurisdiction over a nonresident defendant").

Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler v. Bauman*, 134 S. Ct. 746, 753 (2014)). A court may assert general jurisdiction over a foreign corporation "to hear any and all claims against it" only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction, on the other hand, "is available for a suit that arises out of the forum-related activity." *Advanced Tactical*, 751 F.3d at 800. Three requirements exist to establish specific jurisdiction: "(1) the defendant must have purposely availed himself of the privilege of conducting business in the forum state or

purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citations omitted).

II.     **The Second Amended Complaint Fails to Establish Personal Jurisdiction over UMG**

    A.     **General Jurisdiction**

Plaintiff first argues that the Court has general jurisdiction over UMG. Specifically, Plaintiff reasons that UMG should be estopped from denying personal jurisdiction here because it previously admitted to having substantial Illinois contacts in two other cases. (R.89, Response Br. at 10-11). Namely, in 2007 and 2011 pleadings, UMG admitted that it "has substantial contacts with the State of Illinois and that it sells goods in this [Northern District of Illinois]." *See Estate of Charles Stepney v. UMG Recordings, Inc.*, R.7, No. 10-CV-8266 at ¶ 6; *Johnson v. UMG Recordings, Inc., et al.,* R.46, No. 07-CV-7288 at ¶ 3 (admitting that "venue and personal jurisdiction are proper in this District"). UMG responds that "[b]ecause the law has changed since UMG filed those answers" in 2007 and 2011, judicial estoppel does not apply, and it is no longer subject to general jurisdiction. (R.91, Reply Br. at 3-4). The Court agrees with UMG.

As an initial matter, the Court notes that "consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum." *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 37 n.10 (D.D.C. 2014). Plaintiff cites no authority holding that, by submitting to jurisdiction in one case, a foreign defendant necessarily submits to that court's jurisdiction in all later-filed cases. Furthermore, judicial estoppel does not proscribe changes in position based on changes in the law. *See Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 915 (7th Cir. 2005). Here, *Daimler* (2014)

5

makes clear that general jurisdiction is "proper only in the limited number of fora in which the defendant can be said to be 'at home.' For a corporation, such places include the state of incorporation and the state of the principal place of business." *Advanced Tactical*, 751 F.3d at 800; *Daimler*, 134 S. Ct. at 761-62. Here, UMG is neither incorporated nor has its principal place of business in Illinois. Its five Illinois-based employees comprise only a fraction of its total workforce, and UMG owns no real property in the state. Such contacts are not so substantial as to render UMB "essentially at home" in Illinois. Given *Daimler*, and Plaintiff's failure to demonstrate the applicability of the judicial estoppel doctrine here,[2] the Court declines to exercise jurisdiction over UMG on a general jurisdiction theory.

### B. Specific Jurisdiction

The Court next examines whether it has specific jurisdiction over UMG. The Seventh Circuit recently provided guidance on this issue, stating:

> Nearly 70 years ago, the Supreme Court held that due process is satisfied for this purpose so long as the defendant had "certain minimum contacts" with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). *Walden* serves as a reminder that the inquiry has not changed over the years, and that it applies to intentional tort cases as well as others. *See* [*Walden v. Fiore*, 134 S. Ct. 1115, 1119 (2014)].
>
> The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. *Id*. (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id*. at 1121 (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id*. at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . . ." *Id*.

---

[2] Plaintiff has failed, for example, to demonstrate that (*i*) UMG "prevailed on the basis of its earlier position" or that (*ii*) UMG's present personal jurisdiction challenge imposes an "unfair detriment" on Plaintiff. *See Jarrad*, 408 F.3d at 914-15.

6

> at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).
> Contacts between the plaintiff or other third parties and the forum do not satisfy
> this requirement. *Id.*; *see Walden*, 134 S. Ct. at 1122.

*Advanced Tactical*, 751 F.3d at 800-01. Plaintiff sets forth several allegations purporting to tie Defendant UMG to the distribution, marketing, and/or sale of "Juice" products within Illinois borders. Ultimately, however, these allegations do not meet the federal due process standard articulated above.

### 1. Live Performances

Plaintiff first alleges that, in 1992 and again in 2015, individual Defendants performed the misappropriated "Juice" song before live audiences in Illinois. (R.78, Second Am. Compl. ¶ 22-23). These allegations are insufficient to establish specific jurisdiction over UMG in this action, though, as such conduct represents "unilateral activity of a third party that cannot satisfy the requirement of contact with the forum state." *Walden*, 134 S. Ct. at 1125 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1978)). Plaintiff does not tie UMG to these live performances. The Court, therefore, does not consider these allegations in its jurisdictional analysis. *See Advanced Tactical*, 751 F.3d at 800-01.

### 2. Distribution and Sales Activities

Plaintiff next alleges that, between 1991 and 2015, "UMG by itself and through its predecessors and distributors" caused the misappropriated "Juice" products "to be distributed within Illinois and to other states and also sold to Illinois citizens through brick and mortar retailers and on the internet, through commercial websites such as www.amazon.com and www.itunes.com and through the UMG website." (R.78, Second Am. Compl. ¶ 21). According to Plaintiff, around 2014, "product distribution and marketing for UMG in Illinois were combined, and the corporate name of UMG's distributor/marketing company was changed to

UMG Commercial Services, Inc., which is currently registered to do business in Illinois." (*Id.* ¶ 10). Before such time, UMG's distributor was known as Universal Music Group Distribution, Corp. (*Id.* ¶ 8).

In response, UMG submits an affidavit concerning the relationship between UMG and UMG Commercial Services, Inc. ("UMGCS"). In particular, the UMG representative avers that UMG and UMGCS have the same corporate parent, but they operate separately from each other – in particular, UMG neither owns nor controls UMGCS. (R.83-1, Cho Decl. ¶¶ 9-11). In briefing, UMG refers to UMGCS as "its distribution affiliate," but again emphasizes that it neither owns nor controls this entity. (R.83, Opening Br. at 5-6). Plaintiff, in turn, points to a job advertisement referring to UMGCS as a "business unit" of UMG, arguing that the two entities "share[] services" within the corporate family. (R.78-8, Ex. 5 to the Second Am. Compl; R.89, Response Br. at 14).

Even accepting paragraph 21 in the Second Amended Complaint as true, however, Plaintiff still fails to show that UMG—as opposed to any distribution affiliate— purposefully directed its activities toward Illinois. *See Advanced Tactical*, 751 F.3d at 800. Allegations concerning the conduct of separate corporate entities cannot, alone, create jurisdiction over UMG. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944-46 (7th Cir. 2000) (recognizing that corporate affiliation alone cannot serve as a basis for personal jurisdiction). While the nature of the relationship between UMG and its distributors may be relevant to a "stream-of-commerce" theory of personal jurisdiction, *see Russell*, 987 N.E.2d at 794, Plaintiff makes no specific showing of UMG purposefully availing itself to Illinois markets. *Contra Russell*, 987 N.E.2d at 795-96 (emphasizing that foreign

defendant worked closely with its distributors and had an independent business relationship with another Illinois-based company).[3]

Similarly, allegations concerning the sale of "Juice" products through UMG's website cannot, alone, establish specific jurisdiction over UMG. Indeed, as the Seventh Circuit recently clarified, "[h]aving an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Advanced Tactical*, 751 F.3d at 803. Here, Plaintiff offers no evidence of geographically-focused targeting that could subject UMG to personal jurisdiction on the basis of its alleged online sales. *See id.*; *see also be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (explaining that "a defendant must in some way target the forum state's market" through the interactive website and noting that evidence of twenty Illinois residents using the website was too attenuated to give rise to personal jurisdiction).

Furthermore, even assuming that UMG made retail and online sales of "Juice" to Illinois residents throughout 1991-2015, Plaintiff fails to quantify these sales, or to otherwise demonstrate their substantiality through metrics such as market share. Without such information, the Court cannot determine whether UMG's "conduct connects [it] to the forum in a meaningful way," or whether these sales constitute "random, fortuitous, or attenuated" contacts which courts have deemed insufficient to confer personal jurisdiction. *See Walden*, 134 S. Ct. at 1123, 1125.

This lack of meaningful information distinguishes this case from the case on which Plaintiff primarily relies, *Russell v. SNFA*. In *Russell*, the Illinois Supreme Court held that a French manufacturer of custom-made aerospace bearings had the requisite minimum contacts

---

[3] Plaintiff also contends that UMG acquired MCA Records, Inc. in approximately 1998, and that, before such time, MCA Records, Inc. and its distribution affiliates conducted business in Illinois. (R.78, Second Am. Compl. ¶ 8, 18-20). As with UMG, however, Plaintiff fails to demonstrate that MCA Records, Inc.'s Illinois contacts are sufficient to invoke either general or specific jurisdiction, even assuming that the Court may impute those contacts to UMG for purposes of the present jurisdictional analysis.

9

with Illinois to subject it to jurisdiction for related product liability claims. In so holding, the *Russell* court looked to "information about defendant's sales, marketing, and distribution activities" obtained during the course of jurisdictional discovery, as well as similar information obtained from the manufacturer of the helicopter involved in the incident and from the U.S.-based distributor of the defendant's tail-rotor bearings. *See* 987 N.E.2d at 781. After reviewing the jurisdictional record—including evidence establishing (1) specific Illinois sales of the defendant's custom-made products, both as individual parts and in helicopters; and (2) the defendant's ongoing business relationship with an Illinois division of a separate aerospace machinery manufacturer, including evidence of product sales and on-site meetings—the *Russell* court held that SNFA had purposefully availed itself to Illinois markets. *Id.* at 782-83, 797. Here, by contrast, the record does not permit the Court to make this finding as to Defendant UMG.

Because Plaintiff has failed to establish that UMG's suit-related conduct created a "substantial connection" with Illinois, the Court declines to exercise jurisdiction over UMG on a specific jurisdiction theory. *See Advanced Tactical*, 751 F.3d at 800. In view of the ambiguity surrounding UMG's distribution network and the Illinois sales of "Juice" products, however, the Court grants UMG's Rule 12(b)(2) motion without prejudice.

### III. Jurisdictional Discovery

It is within the Court's discretion to permit targeted jurisdictional discovery. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000); *Reimer Express World Corp.*, 230 F.3d at 947; *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *6-7 (N.D. Ill. Mar. 28, 2014). Here, the Court grants Plaintiff leave to seek jurisdictional discovery concerning four topics: (1) UMG's retail sale, if any, of "Juice" products within

Illinois in the years 1991-2015; (2) the retail sale, if any, of "Juice" products by UMG's distribution affiliates pursuant to any negotiated arrangement with UMG in the years 1991-2015, both within Illinois and as compared to other states; (3) UMG's online sales, if any, of "Juice" products in the years 1991-2015 as a result of Illinois-focused marketing or other targeting efforts; and (4) any other Illinois-focused marketing or targeting activity of UMG as related to "Juice" products throughout 1991-2015. The Court limits Plaintiff to the service of eight, single-part interrogatories touching upon these topics. The Court also grants Plaintiff the opportunity to conduct a Rule 30(b)(6) deposition of UMG concerning these limited topics. Plaintiff shall complete this jurisdictional discovery by August 12, 2016.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant UMG's Rule 12(b)(2) motion to dismiss without prejudice, and grants Plaintiff the opportunity to conduct the limited jurisdictional discovery described herein. The Court grants Plaintiff leave to replead on or before August 29, 2016. *See Indag GmbH & Co. v. IMA S.P.A*, No. 15 C 4973, 2015 WL 8331278, at *19 (N.D. Ill. Dec. 9, 2015).

**Dated:** June 28, 2016

_____
AMY J. ST. EVE
United States District Court Judge